UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
<u>CENTRAL DIVISION at LEXINGTON</u>

CIVIL ACTION NO. 06-37-KSF

ELIZABETH CLARK, ET AL.  PLAINTIFFS

vs.  **OPINION AND ORDER**

KATHY ADAMS, ET AL.  DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiffs' Motion to Lift the Stay [DE 62]. Having reviewed the briefs of the parties and the record herein, the Court concludes that it should continue to abstain from interference with Plaintiffs' state licensure proceedings until those proceedings are completed.

**I.   BACKGROUND**

Plaintiffs initiated this federal action on February 7, 2006, in a fairly obvious effort to prevent Kentucky administrative agencies from suspending Clark's license to operate Copper Care, Inc., "a Child Placing Agency." [DE 1, ¶ 30]. Twenty-four employees of the Cabinet for Health and Family Services were named as defendants, including the Cabinet Secretary. [DE 1]. Plaintiffs alleged seven causes of action – unlawful search, selective enforcement, retaliation, Fourteenth Amendment violation, discrimination, conspiracy and neglect. Among the relief they requested were two injunctions: (1) enjoin defendants from "interfering with the license of Copper Care or otherwise suspending the operation of Copper Care," and (2) enjoin the defendants "from proceeding further in the 'emergency license suspension' proceeding in State Court." [DE 1; p. 31, ¶¶ B and E].

This Court granted Defendants' motion to dismiss all damages claims against them in their official capacities and also dismissed all claims dated prior to February 7, 2005, as they were

barred by the statute of limitations. [DE 47]. The Complaint alleges only the following factual events after February 7, 2005, that could possibly support any of Plaintiffs' causes of action: (1) the interviews of foster children, (2) the attempted access to Copper Care records in April 2005, and (3) the revocation of Copper Care's license following a suspension order. *Id.* at 6. Because state agency proceedings were then pending regarding revocation of Copper Care's license, which involved an important state interest, and because Kentucky law is clear that state circuit courts can hear appeals from administrative agencies when constitutional rights are involved, this Court abstained from further proceedings pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). *Id.* at 6-15. The defense of qualified immunity was also held in abeyance pending the state court proceedings. *Id.* at 16.

At the present time, Plaintiffs' appeals of the state agency proceedings continue through the state court system. Plaintiffs, nonetheless, move this Court to lift the stay, arguing that the state agency could not consider their constitutional and damages claims and that such claims are severable from the claims determined by the state agency. Plaintiffs urge this Court to consider their many claims for damages, such as conspiracy, selective enforcement, racial discrimination and retaliation. However, almost all of the events alleged in support of such claims predate February 7, 2005, and are barred from consideration by this Court. At first blush, it appears that the only claims that might still be viable in this Court would be any possible constitutional claims that could arise from the interviews of foster children, any searches and seizures in April 2005,[1] and any racial discrimination claims associated with revocation of Copper Care's license.

By way of background, the state agency proceedings reflected in the record are as follows. An emergency suspension of Copper Care's license and a preliminary order to close was issued April 27, 2005. [DE 62-2, p. 3]. An Administrative Law Judge ("ALJ") heard testimony on Copper

---

[1] From the record before the Court, it appears that nothing was searched or seized on April 22 or April 26, 2005. Indeed, it was the refusal to permit an inspection of records by the Cabinet that led to the emergency suspension of Copper Care's license.

2

Care's appeal May 17, 2005. According to Plaintiffs, this hearing considered only the events of April 22 and April 26, 2005,[2] during which employees of the Cabinet for Health and Human Services ("Cabinet") attempted to review Copper Care's records. *Id.* Plaintiffs state that "the ALJ's findings of fact and conclusions of law were devoid of any facts regarding allegations of racial discrimination by Cabinet officials against [Plaintiffs]." *Id.* Plaintiffs do not claim, however, that they raised as a defense that the Cabinet's action was really based on racial discrimination. *Id.* at 5. According to Plaintiffs, Copper Care was found to have violated administrative regulations by refusing to allow access to its records. "The ALJ concluded that Copper Care violated Kentucky administrative regulations that obligate a child-placing agency to provide human services surveyors with access to the agency's files at all times and that Copper Care's actions thwarted an investigation into suspected abuse and neglect such that it presented an immediate threat to the public health warranting the Cabinet's Immediate Suspension Order." [DE 62-2, p. 5]. Defendants state that "Copper Care has taken no action to prosecute its appeal" to the Madison Circuit Court from the Final Order of the Cabinet for Health and Family Services regarding the emergency suspension. [DE 64-2, p. 2].

On April 14, 2005, the Cabinet informed Copper Care that its child-placing agency license was being revoked. *Id.* at 6. Copper Care appealed and the matter was heard by an ALJ on July 26, 2005, August 4-5, 2005, and September 14, 2005. [DE 62-2, p. 6]. The Cabinet argued that Copper Care failed to submit acceptable plans for correction of deficiencies for which it was cited in 2004. *Id.* Regarding their constitutional claims, Plaintiffs state the following:

> Arguably, Copper Care attempted to raise similar civil rights issues in the administrative hearing as those alleged in this federal case in its motion for relief terminating the revocation proceedings and for money damages for unconstitutional actions by the Cabinet against Copper Care. However, the ALJ refused to consider those bases and stated specifically – in his findings of fact and conclusions of law – that the Health Services Administrative Hearings Branch does not have

---

[2] The transcript page referenced by Plaintiffs, DE 17-8, p. 6, shows that "the parties stipulated that we were going to focus on the events of April 22nd and April 26th."

3

jurisdiction over constitutional challenges with respect to the balance of relief sought. (Doc. 27-2, at p. 3).

[DE 62-2, p. 7]. The record reflects the actual statement of the ALJ is as follows:

> Copper Care moved for the following relief, terminating these proceedings: 1) that the Cabinet relicense Copper Care; 2) a "PCP" agreement with the state be reinstated; 3) the child placement referrals to Copper Care immediately resume; 4) the Cabinet be censored for its actions; and 5) that Copper Care be granted monetary relief for what Copper Care alludes to as adverse, unconstitutional, and unwarranted suspension and revocation of Copper Care's license. It was made clear that the Health Services Administrative Hearings Branch does not have jurisdiction over constitutional challenges and with respect to the balance of the relief sought, the motion was denied.

[DE 72-2, pp. 3-4]. According to this statement, it does not appear that Copper Care was asserting any "defense" of racial discrimination in the revocation proceedings. Instead, it was affirmatively moving for monetary damages for racial discrimination, which the ALJ correctly stated was outside of the jurisdiction of the Hearings Branch.

Ultimately, the ALJ recommended that the Cabinet's decision to revoke Copper Care's license be affirmed, and the Cabinet issued a Final Order to that effect. [DE 62-2, p. 7]. Plaintiffs appealed the decision to the Madison Circuit Court, and the matter is still pending in the Kentucky state court system. [DE 64-2, p. 3].

II. ANALYSIS

The Sixth Circuit recently described the common procedural posture of a case in which courts abstain under *Younger v. Harris*, 401 U.S. 37 (1971):

> In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings.

*Devlin v. Kalm*, ___ F.3d ___, 2010 WL 481301 at *1 (6th Cir. February 12, 2010), quoting *Crawley v. Hamilton County Comm'rs,*, 744 F.2d 28, 30 (6th Cir. 1984). The description fits Plaintiffs' federal court action perfectly, although the facts in *Devlin* were distinguishable and abstention was denied. Plaintiffs here sought to enjoin the state agency proceedings to revoke Copper Care's

4

license, claiming in this Court that the state discriminated against her and those with whom she did business on the basis of her race.

Plaintiffs' case bears a strong similarity to *Watts v. Burkhart*, 854 F.2d 839 (6th Cir. 1988). There, a state agency sought to suspend Watts' license to practice medicine, claiming he prescribed controlled substances when not medically indicated and prescribed or distributed them to persons addicted to the substances. *Id.* at 840. Watts contended that he was being forced to surrender his license because of his race, and not because of the way he was practicing medicine. *Id.* at 850. Shortly after he was given notice of the hearing to suspend his license, Watts filed an action under 42 U.S.C. § 1983 and named the licensure agency and members of its board. *Id.* at 841. He alleged violations of his due process and equal protection rights and sought damages and attorney's fees. He also sought to enjoin the pending administrative proceedings. *Id.*

The court noted that *Younger* abstention was specifically approved for situations involving state administrative proceedings in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). *Watts*, 854 F.2d at 844. The court said, "[w]here vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Id.* at 845, quoting *Middlesex* 457 U.S. at 432, internal quotations omitted. Watts claimed that he would "not be permitted to assert his constitutional claims in the administrative proceedings before the Board." *Id.* at 848. The Sixth Circuit responded:

> This contention is supported by the record, which shows that after Watts asserted his constitutional claims as affirmative defenses to the Division's motion to summarily suspend his license, the Division successfully brought a motion to strike those defenses on the ground that they were not within the scope of review of proceedings before the Board of Medical Examiners. This fact alone does not, however, establish that Watts will be deprived of an opportunity to present his constitutional claims. In [*Ohio Civil Rights Commission v.] Dayton Christian Schools*, [477 U.S. 619, 629], the Supreme Court stated that "it is sufficient ... that constitutional claims may be raised in state court judicial review of the administrative proceeding."

*Id.*

Accordingly, in the present case, even if Plaintiffs had presented evidence that the claim of racial discrimination was raised as a defense in the license suspension and revocation proceedings, and even if the state agency had struck that defense, the opportunity to present the constitutional claims is sufficient if they "may be raised in state court judicial review of the administrative proceeding." *Dayton Christian Schools*, 477 U.S. at 629; *Watts*, 854 F.2d at 848. Kentucky recognized long ago that circuit courts are courts of general jurisdiction that can hear all questions properly before the court on appeal from an administrative agency. *American Beauty Homes Corp. v.* Louisville, 379 S.W.2d 450, 446 (Ky. 1964). "There is an inherent right of appeal from orders of administrative agencies where constitutional rights are involved." *Id.* Younger abstention in the present case is also consistent with the decisions under analogous circumstances in *Middlesex,* 457 U.S. 423; *Dayton Christian Schools*, 477 U.S. 619; and *Watts*, 854 F.2d 839.

In an effort to distinguish the federal case from the state court action and to encourage severance of the damages claims, Plaintiff argues vigorously that, even if the state court could consider her claims for racially motivated civil rights violations, "the state court would not be able to award Plaintiffs monetary relief for the alleged civil rights violations as that is out of the scope of its judicial review." [DE 62-2, p. 8]. While it is true that the state court could not award damages as part of its appellate review of the agency decision, that fact simply supports this Court granting a stay, rather than dismissal, of the damages claim. District courts, "when abstaining from adjudicating a claim for injunctive relief, should stay rather than dismiss accompanying claims for monetary relief and attorney's fees when such relief is not available from the ongoing state proceeding." *Watts*, 854 F.2d at 845, citing *Deakins v. Monaghan,* 484 U.S. 193 (1988).

Moreover, it is not possible for a court to consider Plaintiffs' claims for damages without considering the underlying merits of the claim – was Copper Care's license wrongfully revoked based on racial discrimination? This question cannot be answered without impacting the ongoing state proceedings, which are currently on appeal in state court. Licensing of child-placing agencies

6

involves the important state interest of the well being of the state's foster children. Just as federal courts should abstain from interfering with lawyer disciplinary proceedings (*Middlesex)*, or medical licensure proceedings (*Watts*), so should they abstain from interfering with licensure proceedings for child-placing agencies.

### III. CONCLUSION

**IT IS ORDERED** that:

A. Plaintiffs' motion to lift the stay in this matter [DE 62] is **DENIED**; and

B. The parties are **ORDERED** to provide a status report to this Court on or before **March 1, 2010**, and every four months thereafter until the state proceedings are finally concluded or until further orders of this Court.

This February 17, 2010.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge